IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS HEALTH CORPORATION AND SUBSIDIARIES, | ) ) ) | Case No. 1:23-cv-00492-MSM |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## ANSWER OF UNITED STATES OF AMERICA

**Defendant responds to plaintiff's complaint as follows:**[1]

1.      CVS Health brings this action under 26 U.S.C. § 7422 for the refund of federal

income taxes.  CVS Health properly claimed the domestic production activities deduction

("Domestic Production Activities Deduction") under 26 U.S.C. § 199 ("Section 199") <Fnt. 1>

related to CVS Health's (1) production of certain photograph products ("Photos"), (2) production

of certain prescription drugs ("Prescription Drugs"), (3) production of its weekly advertising

circular ("Circulars"), (4) production of certain packaging ("Blister Packs"), and (5) production

of computer software products ("Software") on its federal income tax returns for the years ended

December 31, 2014 through December 31 2017 ("the years at issue").  <Fnt. 2>  The Internal

Revenue Service ("IRS") erroneously denied the deductions.  CVS Health paid the resulting

federal income tax deficiencies and timely filed claims for refund with the IRS.  The IRS refused

---

[1] **Defendant's responses appear in bold type.  Plaintiff's allegations are copied into this Answer, paragraph by paragraph, for reference; however, the headings and sub-headings in plaintiff's complaint (other than the "prayer for relief" identifier) have been removed. Where an allegation includes a footnote, the footnote is appended to plaintiff's particular numbered paragraph.**

to refund CVS Health an overpayment of its 2014 federal income taxes in the amount of $57,954,657, an overpayment of its 2015 federal income taxes in the amount of $103,209,402, an overpayment of its 2016 federal income taxes in the amount of $111,886,280, and an overpayment of its 2017 federal income taxes in the amount of $129,414,729.

<Fnt. 1>: Except as otherwise indicated, references to "Sections" or to 26 U.S.C. are to the Internal Revenue Code of 1986 as amended and in effect during the tax years at issue.

<Fnt. 2>: CVS Health claimed the Section 199 deduction related to its production of Blister Packs on its federal income tax returns only for its tax years ended December 31, 2015 through December 31, 2017.

**ANSWER**:  **Admits that CVS Health has invoked 26 U.S.C. § 7422 in this action to obtain a refund of federal income taxes but denies that it is entitled to this refund.  Admits CVS Heath is claiming domestic production activities deductions under former 26 U.S.C. § 199 for the tax years at issue,  purportedly for what it defines as "Photos," "Prescription Drugs," "Circulars," "Blister Packs," and "Software," but denies it has properly claimed these deductions.  States that Fnt. 1 of the Complaint is a definitional statement that does not require a response under Fed. R. Civ. P. 8(b).  Admits the allegation contained in Fnt. 2 of the Complaint.  Denies that the IRS "erroneously denied" the deductions CVS Health claims.  Admits that CVS Health paid its federal income taxes for its 2014 through 2017 tax years and admits that CVS Health filed timely claims for refund for those years.  Denies the alleged "overpayment" amounts for federal income taxes for the years at issue.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

2.      CVS Health is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, RI 02895.

**ANSWER**:  **Admits.**

3.     CVS Health maintained its books and records and timely filed its federal income tax returns on the basis of the calendar year and using the accrual method of accounting.

**ANSWER**:  **Admits CVS Health timely filed its federal income tax returns for its 2014 through 2017 tax years on the basis of the calendar year, using the accrual method of accounting.  Lacks knowledge or information sufficient to form a belief about the truth of how CVS Health maintained its books and records.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

4.     Defendant is the United States of America.

**ANSWER**:  **Admits.**

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.  This action is timely under 26 U.S.C. § 6532(a)(1).

**ANSWER**:  **The United States is not aware of any impediments to the Court's jurisdiction.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of jurisdictional requirements, the allegations constitute legal conclusions and do not require a response.**

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(2).  This is a civil action against the United States, and CVS Health's principal place of business is located within the judicial district.

**ANSWER**:  **Admits that venue is proper in this Court.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of requirements for proper venue, the allegations constitute legal conclusions and do not require a response.**

7.      On January 15, 2021, CVS Health timely filed an amended federal income tax return, Form 1120X, for its tax year ended December 31, 2014, claiming a deduction under Section 199 for its domestic production activities.

**ANSWER**:  **Admits.**

8.      On its amended 2014 federal income tax return, CVS Health reported a Domestic Production Activities Deduction of $239,714,247, and claimed a refund of its 2014 taxes in the amount of $57,954,657.

**ANSWER:  Admits CVS Health claimed a refund of its 2014 taxes in the amount of $57,954,657 based on a purported Domestic Production Activities Deduction of $239,714,247 on its amended 2014 federal income tax return but denies that CVS Health is entitled to the refund it claims for its 2014 tax year.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

9.      On November 25, 2022, CVS Health timely filed amended federal income tax returns, Forms 1120X, for its tax years ended December 31, 2015 through 2017 claiming deductions under Section 199 for its domestic production activities.

**ANSWER:  Admits that CVS timely filed amended federal income tax returns, Forms 1120X, for its tax years ended December 31, 2015 through 2017, claiming deductions under Section 199 for its domestic production activities on or around November 25, 2022.**

10.     On its amended 2015 through 2017 federal income tax returns, CVS Health reported Domestic Production Activities Deductions of $294,884,007 for its 2015 tax year, $290,902,445 for its 2016 tax year, and $333,187,052 for its 2017 tax year, and claimed refunds in the amounts of $103,209,402 for its 2015 tax year, $111,886,280 for its 2016 tax year

(including interest of $10,070,474), and $129,414,729 for its 2017 tax year (including interest of $12,799,260).

**ANSWER:  Admits that CVS Health's amended income tax returns for its 2015 through 2017 tax years reported purported Domestic Production Activities Deductions and claimed refunds in the amounts alleged, but denies that CVS Health is entitled to the refunds it claims for those years.  Lacks knowledge or information sufficient to form a belief as to the truth of what portion of the alleged refund amounts constitutes interest.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

11.     On December 8, 2022, the IRS denied CVS Health's claim for refund for its 2014 tax year, stating that CVS Health did not qualify for the Domestic Production Activities Deduction.

**ANSWER:  Admits that on or about December 8, 2022 the IRS denied CVS Health's claim for refund for its 2014 tax year arising out of its Domestic Production Activities Deduction claims.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

12.     Pursuant to 26 U.S.C. § 6532(a)(1), CVS Health may file a suit for refund of taxes for its 2014 tax year within two years from December 8, 2022.

**ANSWER:  Admits that this action is timely filed as it relates to CVS Health's 2014 tax year.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of the requirements of 26 U.S.C. § 6532(a)(1), the allegations constitute legal conclusions and do not require a response.**

13.     On August 10, 2023, the IRS denied CVS Health's claim for refund for its 2015 tax year, stating that CVS Health did not qualify for the Domestic Production Activities Deduction.

**ANSWER:  Admits that on or about August 10, 2023 the IRS denied CVS Health's claim for refund for its 2015 tax year arising out of its Domestic Production Activities Deduction claim.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

14.     Pursuant to 26 U.S.C. § 6532(a)(1), CVS Health may file a suit for refund of axes for its 2015 tax year within two years from August 10, 2023.

**ANSWER:  Admits that this action is timely filed as it relates to CVS Health's 2015 tax year.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of the requirements of 26 U.S.C. § 6532(a)(1), the allegations constitute legal conclusions and do not require a response.**

15.     On September 27, 2023, the IRS denied CVS Health's claim for refund for its 2016 tax year, stating that CVS Health did not qualify for the Domestic Production Activities Deduction.

**ANSWER:  Admits that on or about September 27, 2023 the IRS denied CVS Health's claim for refund for its 2016 tax year arising out of its Domestic Production Activities Deduction claim.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

16.     Pursuant to 26 U.S.C. § 6532(a)(1), CVS Health may file a suit for refund of taxes for its 2016 tax year within two years from September 27, 2023.

**ANSWER:  Admits that this action is timely filed as it relates to CVS Health's 2016 tax year.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of the requirements of 26 U.S.C. § 6532(a)(1), the allegations constitute legal conclusions and do not require a response.**

17.     On October 3, 2023, the IRS denied CVS Health's claim for refund for its 2017 tax year, stating that CVS Health did not qualify for the Domestic Production Activities Deduction.

**ANSWER:  Admits that on or about October 3, 2023 the IRS denied CVS Health's claim for refund for its 2017 tax year arising out of its Domestic Production Activities Deduction claim.  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

18.     Pursuant to 26 U.S.C. § 6532(a)(1), CVS Health may file a suit for refund of taxes for its 2017 tax year within two years from October 3, 2023.

**ANSWER:  Admits that this action is timely filed as it relates to CVS Health's 2017 tax year.  To the extent any remaining allegations in this paragraph state CVS Health's understanding of the requirements of 26 U.S.C. § 6532(a)(1), the allegations constitute legal conclusions and do not require a response.**

19.     During the years at issue, CVS Health employees produced and sold Photos in its U.S. retail stores, including photograph prints, photograph and movie compact discs ("CDs") and digital video discs ("DVDs"), photograph picture sheets, photograph enlargements, and U.S. Passport and international visa photographs.  CVS Health received gross receipts from customers for the sale of the Photos.

**ANSWER:  Admits that, during the years at issue, photograph prints, photograph and movie CDs and DVDs, photograph picture sheets, photograph enlargements, and U.S. Passport and international visa photographs may have been provided for compensation in CVS Health's U.S. retail stores, but denies that some or all those items were "manufactured, produced, grown, or extracted . . . in whole or in significant part" by CVS Health under former 26 U.S.C. § 199 and regulations thereunder.  Further denies some or all of such compensation constitutes domestic production gross receipts under former 26 U.S.C. § 199 and regulations thereunder.  Lacks knowledge or information sufficient to form a belief about the truth of what additional items that might fall within CVS Health's definition of "Photos."  To the extent allegations in this paragraph have not been otherwise addressed, denies.**

20.    During the years at issue, CVS Health leased or owned and maintained at its U.S. retail stores the photographic processing equipment necessary to produce the Photos, including (i) photograph processing machines, (ii) film processors, (iii) paper processors, (iv) duplex printers, and (v) kiosks.  CVS Health also owned and maintained at its U.S. retail stores the raw materials necessary to produce the Photos, including (i) photograph paper, (ii) ink, (iii) blank CDs, (iv) blank DVDs, (v) folders, (vi) jackets, and (vii) chemicals.

**ANSWER:  Admits that, during the years at issue, CVS Health's U.S. retail stores may have contained certain equipment and supplies regarding "Photos," but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

21.    During the years at issue, trained CVS Health's employees produced, in whole or in significant part, the Photos, in whole or in significant part within the United States, by using

the photograph processing equipment and raw materials located in the U.S. retail stores to transform the retail customers' undeveloped film, film negative images, and digital media images into the finished products.

**ANSWER:  Admits that, during the years at issue, photograph prints, photograph and movie CDs and DVDs, photograph picture sheets, photograph enlargements, and U.S. Passport and international visa photographs may have been provided for compensation in CVS Health's U.S. retail stores but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

22.    During the years at issue, CVS Health produced and sold in its U.S. retail stores Prescription Drugs, including compounded and reconstituted prescribed medications.  CVS Health received gross receipts from customers for the sale of the Prescription Drugs.

**ANSWER:  Admits that, during the years at issue, CVS Health may have sold in its U.S. retail stores prescription drugs and/or prescribed medications that may have been compounded or reconstituted in those retail stores but denies that those items were "manufactured, produced, grown, or extracted . . . in whole or in significant part" by CVS Health under former 26 U.S.C. § 199 and regulations thereunder.  Further denies that receipts CVS Health might have obtained from the sale of Prescription Drugs constitute domestic production gross receipts under former 26 U.S.C. § 199 and its regulations. Lacks knowledge or information sufficient to form a belief about the truth of what additional items that might fall within CVS Health's definition of "Prescription Drugs." To the extent allegations in this paragraph have not been otherwise addressed, denies.**

23.    During the years at issue, some retail customers presented CVS Health with prescriptions for medications that CVS Health could not fill with "off the shelf" medications.  To

fill those prescriptions, CVS Health leased or owned and maintained at its U.S. retail stores the equipment necessary to produce the Prescription Drugs, including compounding benches, "Fillmaster" water purification systems, refrigerators, microwave ovens, mortars and pestles, graduated cylinders, spatulas, bottles, and cleaning supplies.  CVS Health also owned and maintained at its U.S. retail stores, the raw materials necessary to produce the Prescription Drugs, including pharmaceutical compounds.

**ANSWER**:  **Admits that, during the years at issue, CVS Health's U.S. retail stores may have contained certain equipment and supplies necessary to compound or reconstitute certain prescribed medications, but denies that those medications were "manufactured, produced, grown, or extracted . . . in whole or in significant part" by CVS Health under former 26 U.S.C. § 199 and its regulations.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

24.     During the years at issue, a trained CVS Health pharmacist or pharmacist intern created, in whole or in significant part, the Prescription Drugs, in whole or in significant part within the United States, by combining, mixing, or altering, and thereby transforming, various pharmaceutical compounds, in its U.S. retail stores.  This process is known as "drug compounding" or "drug reconstituting," depending on the particular process the CVS Health pharmacist or pharmacist intern followed.

**ANSWER**:  **Denies that any Prescription Drugs that may have been sold following "drug compounding" or "drug reconstituting" processes alleged in this paragraph were "manufactured, produced, grown, or extracted . . . in whole or in significant part" by CVS Health under former 26 U.S.C. § 199 and its regulations.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

25.     During the years at issue, CVS Health produced and distributed weekly advertising Circulars.  The Circulars featured various products and contained coupons and other offers to attract customers into CVS Health's retail stores.  CVS Health distributed the Circulars to retail customers weekly through direct mail, local newspapers, and at CVS Health's retail stores.  CVS Health received gross receipts from vendors for advertising their products in the Circulars.

**ANSWER:  Denies that CVS Health produced weekly advertising Circulars.  Denies that CVS Health received domestic production gross receipts under former 26 U.S.C. § 199 and its regulations with respect to weekly advertising Circulars.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26.     During the years at issue, CVS Health produced, in whole or in significant part, the Circulars, in whole or in significant part within the United States by creating the content and performing the prepress printing of the Circulars in the United States.

**ANSWER:  Denies.**

27.     During the years at issue, CVS Health sent an electronic prepress file to a third-party, Quad/Graphics, Inc., to perform the presswork in the United States under printing services agreements ("the Agreements").  Under the Agreements, Quad/Graphics, Inc. used CVS Health's paper for the presswork and assembled the Circulars in the format specified by CVS Health. CVS Health retained the benefits and burdens of ownership of the Circulars during the period in which Quad/Graphics, Inc. performed the presswork and assembled the Circulars.

**ANSWER:  Denies that CVS Health retained the benefits and burdens of ownership of weekly advertising Circulars during any periods in which Quad/Graphics, Inc.**

11

**performed the presswork and assembled them.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

28.    During the years at issue, CVS Health produced and sold Blister Packs.  CVS Health received gross receipts for the sale of the Blister Packs to customers.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

29.    During the years at issue, some CVS Health customers required medications in pill form to be packaged individually.  To fill those customer orders, CVS Health created, in whole or in significant part, the Blister Packs, in whole or in significant part within the United States, by heating, molding, and otherwise transforming various raw materials, such as plastic PVC and aluminum "lidding material," into packaging into which CVS Health inserted individual pills.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30.    During the years at issue, CVS Health produced, licensed, and allowed its customers to use the Software.  CVS Health received gross receipts from customers for the license and use of the Software.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31.    During the years at issue, CVS Health's customers included organizations that managed prescription benefit plans, such as managed care organizations, health insurers, third-party administrators, employers, union sponsored benefit plans, workers compensation plans, and government health care plans (the "Customers").  The Customers provided prescription benefits

to individuals who received prescription drug benefits through their employer, health plan, or directly through Medicare Part D ("Plan Members").

**ANSWER:  Admits that, during the years at issue, CVS Health provided pharmacy benefit management services; further admits that its customers for those services included managed care organizations, health insurers, third-party administrators, employers, union sponsored benefit plans, workers compensation plans, and government health care plans. Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32.    During the years at issue, CVS Health provided its Customers products and services to help them manage their prescription benefit plans.  CVS Health provided its Customers Software as well as services, such as retail network pharmacy management, drug formulary management, and drug utilization management.

**ANSWER:  Admits that, during the years at issue, CVS Health provided pharmacy benefit management services to customers such as managed care organizations, health insurers, third-party administrators, employers, union sponsored benefit plans, workers compensation plans, and government health care plans.  Denies that CVS Health provided software to its clients for any reason other than to facilitate delivering pharmacy benefit management services to them.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33.    During the years at issue, Customers used CVS Health's Software to adjudicate claims made by their Plan Members for prescription benefits and to perform related functions to administer their prescription benefit plans.

**ANSWER:  Denies.**

34.     During the years at issue, claims adjudication was the process by which Customers verified and processed prescription drug claims, including, but not limited to, verification of status as a Plan Member, eligibility and drug coverage, determination of pricing details, co-payments, and coordination of benefits.  By using the Software, Customers fully automated their claims adjudication process and provided Plan Members real-time adjudication and processing at the point of sale.

**ANSWER:  Denies that during the years at issue, the adjudication process included Customers' verification and processing of prescription benefits, as alleged.  Otherwise, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

35.     CVS Health's employees produced, in whole or in significant part, the Software, in whole or in significant part within the United States, by creating, developing, and improving the Software.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

36.     During the years at issue, CVS Health licensed, otherwise disposed of, or otherwise provided its Customers access to the Software for the Customers' direct use, while connected to the Internet or other public or private communications network, to adjudicate their Plan Members' prescription drug claims.

**ANSWER:  Denies.**

37.     Other businesses derived, on a regular and ongoing basis in their businesses, gross receipts from the lease, rental, license, sale, exchange, or other disposition to their customers of software that was substantially identical to CVS Health's Software and either affixed the

software to a tangible medium (for example, a disk or DVD) or by allowing customers to download the software from the Internet.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

38.     From the customers' perspective, the other businesses' software had the same functional result as CVS Health's Software, and had a significant overlap of features or purpose with CVS Health's Software.

**ANSWER:  Lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39.     For the years at issue, Section 199 provided the Domestic Production Activities Deduction, which was a deduction from federal income tax based on income derived from domestic production activities.

**ANSWER:  To the extent that CVS Health's statements in this paragraph constitute legal analysis rather than allegations for which a response is required under Fed. R. Civ. P. 8(b), the United States offers no response; to the extent that a response is required, the United States denies that such allegations constitute a complete or fully accurate description or analysis of former 26 U.S.C. § 199.**

40.     For the years at issue, the Domestic Production Activities Deduction as equal to 9 percent of the lesser of (1) the taxpayer's Qualified Production Activities Income ("QPAI") or (2) taxable income (determined without regard to Section 199), provided that the claimed deduction did not exceed 50 percent of the W-2 wages properly allocable to Domestic Production Gross Receipts ("DPGR").

**ANSWER**:  To the extent that CVS Health's statements in this paragraph constitute legal analysis rather than allegations for which a response is required under Fed. R. Civ. P. 8(b), the United States offers no response; to the extent that a response is required, the United States denies that such allegations constitute a complete or fully accurate description or analysis of former 26 U.S.C. § 199.

41.     DPGR were the gross receipts of the taxpayer that were derived from the license, lease, rental, sale, exchange or other disposition of Qualifying Production Property ("QPP") that was manufactured, produced, grown, or extracted in whole or in significant part by the taxpayer in whole or in significant part within the United States.   QPAI was the taxpayer's DPGR less the costs of goods sold and deductions allocable to the DPGR.

**ANSWER**:  To the extent that CVS Health's statements in this paragraph constitute legal analysis rather than allegations for which a response is required under Fed. R. Civ. P. 8(b), the United States offers no response; to the extent that a response is required, the United States denies that such allegations constitute a complete or fully accurate description or analysis of former 26 U.S.C. § 199.

42.     In the years at issue, the Photos, Prescription Drugs, Circulars, Blister Packs, and Software were QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States.

**ANSWER**:  Denies.

43.     In the years at issue, CVS Health derived gross receipts from selling, licensing, or otherwise disposing of the Photos, Prescription Drugs, Circulars, Blister Packs, and Software to its Customers, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a).

**ANSWER**:  **Denies.**

44.     In the years at issue, the Photos were QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States under Section 199 and Treas. Reg. §§ 1.199-3(e), (g)(2), and (g)(3).

**ANSWER**:  **Denies.**

45.     In the years at issue, CVS Health derived gross receipts from selling the Photos to its Customers, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a)(1).

**ANSWER**:  **Denies.**

46.     In the years at issue, the Prescription Drugs were QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States under Section 199 and Treas. Reg. §§ 1.199-3(e), (g)(2), and (g)(3).

**ANSWER**:  **Denies.**

47.     In the years at issue, CVS Health derived gross receipts from selling the Prescription Drugs to its Customers, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a)(1).

**ANSWER**:  **Denies.**

48.     In the years at issue, the Circulars were QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States under Section 199 and Treas. Reg. §§ 1.199-3(e), (g)(2), and (g)(3).

**ANSWER**:  **Denies.**

49. In the years at issue, CVS Health derived gross receipts from advertisers that placed advertisements in the Circulars, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a)(1) and (i)(5)(ii).

**ANSWER: Denies.**

50. In the years at issue, the Blister Packs were QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States under Section 199 and Treas. Reg. §§ 1.199-3(e), (g)(2), and (g)(3).

**ANSWER: Denies.**

51. In the years at issue, CVS Health derived gross receipts from selling Blister Packs, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a)(1).

**ANSWER: Denies.**

52. In the years at issue, the Software was QPP that was produced in whole or in significant part by CVS Health in whole or in significant part within the United States under Section 199 and Treas. Reg. §§ 1.199-3(e), (g)(2), and (g)(3).

**ANSWER: Denies.**

53. In the years at issue, CVS Health derived gross receipts from licensing or otherwise disposing of the Software to its customers, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. § 1.199-3(a)(1) and (i)(6)(i).

**ANSWER: Denies.**

54. In the years at issue, CVS Health derived gross receipts from providing its Customers access to the Software for the Customers' direct use while connected to the Internet

or other public or private communications network, and those gross receipts qualified as DPGR under Section 199 and Treas. Reg. §§ 1.199-3(a)(1) and (i)(6)(iii).

**ANSWER**:  **Denies.**

55.    In the 2014 through 2017 tax years CVS Health derived DPGR in the amount of $67,774,116,770 for its 2014 tax year, $75,930,019,987 for its 2015 tax year, $101,866,142,079 for its 2016 tax year, and $110,984,673,980 for its 2017 tax year from selling, licensing, otherwise disposing of the Photos, Prescription Drugs, Circulars, Blister Packs, and Software, or otherwise providing its Customers access to the Software for the Customers' direct use while connected to the Internet or other public or private communication network.

**ANSWER**:  **Denies.**

56.    In the 2014 through 2017 tax years, CVS Health had costs of goods sold allocable to its DPGR of $62,980,228,496 for its 2014 tax year, $70,835,937,524 for its 2015 tax year, $95,922,327,279 for its 2016 tax year, and $104,905,924,945 for its 2017 tax year, and deductions and losses allocable to its DPGR in the amount of $2,130,396,642 for its 2014 tax year, $1,817,593,500 for its 2015 tax year, $2,711,565,411 for its 2016 tax year, and $2,376,670,683 for its 2017 tax year, resulting in QPAI of $2,663,491,632 for its 2014 tax year, $3,276,488,962 for its 2015 tax year, $3,232,249,389 for its 2016 tax year, and $3,702,078,353 for its 2017 tax year.

**ANSWER**:  **Denies.**

57.    In the 2014 through 2017 tax years, nine percent of CVS Health's QPAI was $239,714,247 for its 2014 tax year, $294,884,007 for its 2015 tax year, $290,902,445 for its 2016 tax year, and $333,187,052 for its 2017 tax year, which, for each tax year, was less than both (i) CVS Health's taxable income for such year, and (ii) 50 percent of the W-2 wages properly

allocable to CVS Health's DPGR for such year.  Therefore CVS Health's Domestic Production

Activities Deduction under Section 199 for the 2014 through 2017 tax years was $239,714,247

for its 2014 tax year, $294,884,007 for its 2015 tax year, $290,902,445 for its 2016 tax year, and

$333,187,052 for its 2017 tax year.

       **ANSWER**:  **Denies.**

       58.     The IRS illegally and wrongfully denied CVS Health's 2014 through 2017 claims

for refund.

       **ANSWER**:  **Denies.**

**ADDITIONAL DEFENSES[2]**

**FIRST ADDITIONAL DEFENSE**

       **A taxpayer must determine "whether gross receipts qualify as DPGR [domestic**

**production gross receipts] on an item-by-item basis (and not, for example, on a division-by-**

**division, product line-by-product line, or transaction-by-transaction basis)."  26 C.F.R.**

**§ 1.199-3(d)(1).  "Item" means "the property offered by the taxpayer in the normal course**

**of the taxpayer's business for lease, rental, license, sale, exchange, or other disposition . . .**

**to customers," or, under certain circumstances, a component of that property.  § 1.199-**

**3(d)(1)(i), (ii).  This rule prevents taxpayers from receiving the benefits of former 26 U.S.C.**

**§ 199 with respect to gross receipts that should not qualify as DPGR.  *See* Income**

**Attributable to Domestic Production Activities, 70 Fed. Reg. 67,220, 67,222 (proposed Nov.**

**4, 2005); *see also* Income Attributable to Domestic Production Activities, 71 Fed. Reg.**

**31,268, 31,271 (June 1, 2006) (retaining "item-by-item" rule for determination of DPGR).**

---

[2] **The additional defenses below are not affirmative defenses, for which the United States would have the burden of proof.  Instead, they further address allegations contained in CVS Health's Complaint.**

To the extent that CVS Health has not determined its DPGR on an item-by-item basis, it cannot claim the Section 199 deduction.

## SECOND ADDITIONAL DEFENSE

For the gross receipts attributable to an item to constitute domestic production gross receipts, CVS Health must directly derive gross receipts from a disposition of qualified property that CVS Health manufactured, produced, grew, or extracted in whole or in significant part. 26 U.S.C. § 199(c)(4)(A)(i)(I); 26 C.F.R. §1.199-3(e)(1), -3(g)(1), -3(i)(1)(i). Among other criteria, this requirement means CVS Health's activities with respect to the item must exceed mere packaging, repackaging, or minor assembly. *See* 26 C.F.R. § 1.199-3(e)(2). By way of example, activities such as adding ground effects, spoilers, custom wheels, specialized paint and decals, sunroofs, and roof racks, and other accessories to automobiles do not qualify for the deduction. *See* 26 C.F.R. §1.199-3(e)(5), Example 6. Additionally, except as enumerated in the statute and the regulations thereunder, the gross receipts must not be attributable to services (such as retail services, management services, or advertising services).

To the extent that the activities for which CVS Health claims a Section 199 deduction constitute packaging, repackaging, minor assembly, or services, it cannot claim the Section 199 deduction.

## THIRD ADDITIONAL DEFENSE

To the extent that CVS Health is improperly characterizing purchase price adjustments with vendors or reductions in its costs of goods sold as gross receipts derived from advertisements placed in Circulars, CVS Health is not entitled to the Section 199 deductions it claims. Additionally, to the extent that CVS Health contracted for the

printing of the Circulars by a third party and did not bear the burdens and benefits of ownership during the printing process, it is not entitled to the Section 1999 deductions it claims. *See ADVO, Inc. v. Comm'r*, 141 T.C. 298, 320, 324-25, 330-31 (2013); 26 C.F.R. §1.199-3(e)(1), -3(f)(1).

### FOURTH ADDITIONAL DEFENSE

Gross receipts from providing online services do not constitute gross receipts derived from a lease, rental, license, sale, exchange, or other disposition of computer software. *See* 26 C.F.R. §1.199-3(i)(6)(ii). For example, when an internet auction company's customers use computer software that the company produced within the United States to participate in internet auctions for a fee, that does not transform the company's gross receipts from providing those online auction services into DPGR derived from the disposition of computer software. 26 C.F.R. § 1.199-3(i)(6)(v) Example 2. Similarly, CVS Health cannot transform gross receipts from services into DPGR simply by providing its customers the ability to obtain those services online by interacting with "Software."

Under 26 U.S.C. § 1.199-3(i)(6)(iii), DPGR may include only:

> [G]ross receipts from providing customers access to computer software MPGE in whole or in significant part by the taxpayer within the United States <u>for the customers' direct use</u> while connected to the Internet or any other public or private communications network (online software).

§ 1.199-3(i)(6)(iii) (emphasis added). To the extent that the "Software" described in CVS Health's Complaint was not for its customers' direct use, CVS Health is not entitled to the Section 199 deductions it claims.

//

//

22

## FIFTH ADDITIONAL DEFENSE

**To compute its § 199 deduction, a taxpayer must subtract from its DPGR costs of goods sold and other deductions allocable to DPGR.  26 U.S.C. § 1.199-4(b)(1), -4(c)(1). CVS Health cannot claim the § 199 deduction without showing that it properly computed qualified production activities income by subtracting other deductions "that are properly allocable to [its] DPGR."**

Plaintiff's Prayer for Relief

**No response is necessary as to the remainder of the complaint because it is a prayer for relief.  The United States denies all allegations not otherwise specifically admitted, qualified or denied, and respectfully requests that the United States be awarded costs and such other relief as appropriate.**

Dated:  March 25, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Dept. of Justice

/s/ James E. Weaver
JAMES E. WEAVER
Senior Litigation Counsel, Tax Division
STEPHEN N. SHASHY
Trial Attorney, Tax Division
U.S. Dept. of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-4929
Fax:  (202) 307-0054
Email:  james.e.weaver@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ James E. Weaver
JAMES E. WEAVER
Senior Litigation Counsel
United States Department of Justice, Tax Division